UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PATRICIA A. RIVARD,

        Plaintiff,                          Civil Action No. 12-14302

     v.                                District Judge Lawrence P. Zatkoff
                                          Magistrate Judge Laurie J. Michelson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**REPORT AND RECOMMENDATION TO
GRANT IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [9] AND
DENY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [10]**

Plaintiff Patricia A. Rivard appeals Defendant Commissioner of Social Security's ("Commissioner") denial of her application for disability insurance benefits. (*See* Dkt. 1, Compl.) Before the Court for a report and recommendation (Dkt. 2) are the parties' cross-motions for summary judgment (Dkts. 9, 10). For the reasons set forth below, this Court finds that the ALJ erred by failing to articulate a step-three finding, failing to obtain a medical expert opinion on medical equivalence, and failing to address the opinions of a treating physician. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be GRANTED IN PART, that Defendant's Motion for Summary Judgment (Dkt. 10) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be REMANDED for a proper evaluation of the record.

**I. BACKGROUND**

On September 22, 2008, Rivard protectively filed for disability insurance benefits asserting that she became unable to work on January 2, 2007. (Tr. 75, 143.) The Commissioner initially denied her disability application on February 24, 2009. (Tr. 75.) Rivard then requested an administrative hearing, and on September 22, 2010, she appeared with counsel before Administrative Law Judge Regina L. Sleater, who considered her case *de novo*. (Tr. 34–74.) In a November 19, 2010 decision, the ALJ found that Rivard was not disabled within the meaning of the Social Security Act. (*See* Tr. 16–23.) The ALJ's decision became the final decision of the Commissioner on July 24, 2012, when the Social Security Administration's Appeals Council denied Rivard's request for review. (Tr. 1.) Rivard filed this suit on September 27, 2012. (Dkt. 1, Compl.)

Rivard was 44 years old in January 2007, when she alleges she became disabled. (*See* Tr. 143.) She was a passenger in a motor vehicle accident in June 2007 that resulted in a cervical spine fracture with cord contusion; sternal, rib, and scapular fractures; a cardiac contusion, which led to respiratory failure and tachycardia; and traumatic brain injury. (Tr. 233, 630.) After the accident, Rivard required surgery on her cervical spine to install rods and screws, followed by physical therapy, occupational therapy, speech therapy, and home care. (Tr. 233–47.) She continued to experience pain in her neck and numbness and tingling in both arms, and her doctors have recommended another surgery to remove the hardware. (Tr. 262, 290, 610, 658, 807.) Rivard had mild discogenic disease in her cervical spine before the accident (Tr. 396), and has been treated for depression since at least 1996, when she attempted suicide (Tr. 368, 371).

Rivard last worked as a home health care aide in January 2007. (Tr. 41.) She stopped working because she was unable to drive. (*Id.*) She previously worked as a machine operator, small parts assembler, and packager in a factory, and as a waitress, dump truck driver, assistant manager of a mobile home park, land clearing machine operator, and junkyard laborer. (Tr. 41–42, 65–69.) She has two years of college education. (Tr. 69.)

At the hearing, the ALJ solicited testimony from a vocational expert ("VE") to determine whether jobs would be available for someone with functional limitations approximating Rivard's. The ALJ asked about job availability for a hypothetical individual of Rivard's age, education, and work experience who could "frequently lift 10 pounds, occasionally lift 20 pounds, stand and walk for six out of eight hours, sit for six out of eight hours," occasionally lift overhead bilaterally, and "never be around extreme colds," who "should avoid concentrated wetness," "would experience moderate impairments with detailed tasks and instructions so the job should be at a less than detailed level with no more than frequent [changes]," with "concentration [limited to] one and a half to two hours at a stretch," "head movement to be not constant," and push and pull movements limited to non-jarring. (Tr. 70.) The VE testified that such an individual could perform Rivard's past relevant work as a small parts assembler and packager. (*Id.*)

The ALJ also asked the VE about job availability for a hypothetical individual of Rivard's age, education, and work experience who could lift and carry ten pounds occasionally and five pounds frequently, "stand and walk for only 10 minutes at a time," walk "for a half a block without a rest but no overall limit," "must change positions when sitting every 20 minutes

3

but again no overall limit," limited to occasional reaching and handling bilaterally, no fingering bilaterally, and could never be around extreme cold, wetness, or humidity. (Tr. 70–71.) The VE testified that with those limitations on reaching, handling, and fingering, no jobs would be available. (Tr. 71.)

During questioning by Rivard's attorney, the VE testified that all work would be precluded for a hypothetical individual who could not focus and concentrate for more than three hours in an eight-hour workday. (Tr. 71.) She also testified that if in addition to the limitations in the ALJ's first hypothetical the individual would miss more than three days a month of work, all work would be precluded. (Tr. 72–73.) Likewise, if in addition to the limitations in the ALJ's first hypothetical the individual needed to lay down with her upper body propped up for greater than four hours in an eight-hour workday, all work would be precluded. (Tr. 73.)

## II. THE ALJ'S APPLICATION OF THE DISABILITY FRAMEWORK

Under the Social Security Act, disability insurance benefits and supplemental security income "are available only for those who have a 'disability.'" *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505 (DIB); 20 C.F.R. § 416.905 (SSI).

The Social Security regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997); *see also* 20 C.F.R. §§ 404.1520, 416.920. "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of Health and Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

    ALJ Sleater first found that Rivard was insured through December 31, 2011. (Tr. 18.) The ALJ then turned to the five-step sequential evaluation of Rivard's allegation of disability. At step one, ALJ Sleater found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of January 2, 2007. (*Id.*) At step two, she found that Plaintiff had the following severe impairments: cervical pain, depression, opiate dependence, and alcohol abuse in remission. (*Id.*) Next, the ALJ concluded that none of these impairments, alone or in

combination, met or medically equaled a listed impairment. (Tr. 18–19.) Between steps three and four, the ALJ determined that Plaintiff had the residual functional capacity

> to perform work as defined in 20 CFR 404.1567, except, (1) the claimant is able to lift 10 pounds frequently and 20 pounds occasionally, stand and walk 6 out of 8 hours, sit for 6 out of 8 hours; (2) the claimant is able to perform occasional noncontinuous head movement; (3) the claimant is able to perform occasional overhead lifting bilaterally; (4) the claimant can perform only pushing and pulling that is non-jarring; (5) the claimant should not work near extreme cold and concentrated wetness; (6) the claimant is able to perform simple, repetitive tasks; (7) the claimant is unable to work in a setting with more than frequent changes in the work place; and (8) the claimant is able to concentrate for 1 to 2 hours at a stretch.

(Tr. 19.) At step four, the ALJ found based on vocational expert testimony that Plaintiff was capable of performing her past relevant work as a small parts assembler and packager. (Tr. 22–23.) The ALJ therefore concluded that Plaintiff was not disabled as defined by the Social Security Act from the alleged onset date through the date of her decision. (Tr. 23.)

### III. STANDARD OF REVIEW

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited: the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, the Court is limited to an examination of the record and must consider that record as a whole. *Bass v. McMahon*, 499 F.3d 506, 512–13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247.

**IV. ANALYSIS**

Rivard first argues that the ALJ erred at step three by failing to analyze her physical condition in relation to the Social Security Administration's listings of impairments, and that the

7

evidence of her impairments could meet or be medically equivalent to Listing 1.04, disorders of the spine. (Pl.'s Mot. at 10–14.)

In response, Defendant argues that "Plaintiff bears the burden of demonstrating that her impairments met or are medically equal to a Listing," citing *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 350 (6th Cir. 1988). (Def.'s Mot. at 11.) In *Listenbee*, the Court explained:

> [A] claimant must establish that his condition is either permanent, is expected to result in death, or is expected to last at least 12 months, as well as to show that his condition meets or equals one of the listed impairments. Where a claimant successfully carries this burden, the Secretary will find the claimant disabled without considering the claimant's age, education, and work experience.

*Listenbee*, 846 F.2d at 350. The *Listenbee* plaintiff argued that in comparing the evidence of his impairments to the listing requirements for heart disease, the ALJ should have found "his treadmill test was unacceptable and he was entitled to benefits because his cardiac catheterization tests established a listed medical impairment." *Id.* at 351. The Court agreed that the treadmill test on which the ALJ relied was unacceptable and remanded "with instructions to evaluate the medical evidence as it pertains to the criteria outlined in Subsection 4.04(B) to determine whether that evidence establishes an impairment." *Id.* at 352. Thus, *Listenbee* does not stand for the proposition that because it is the claimant's burden to show that his condition meets or equals a listing, the ALJ is not required to compare the medical evidence to the listings.

To the contrary, the Sixth Circuit has held that the ALJ "must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds v. Comm'r*

*of Soc. Sec.*, 424 F. App'x 411, 415 (6th Cir. 2011). In *Reynolds*, the Sixth Circuit found that the ALJ erred because "[n]o analysis whatsoever was done as to whether Reynolds' physical impairments (all summed up in his finding of a severe "back pain" impairment) met or equaled a Listing under section 1.00, despite his introduction concluding that they did not." *Id.* Here, as in *Reynolds*, there was no analysis of whether Rivard's physical impairments met or equaled a listing, despite ALJ Sleater's finding that Rivard had a severe "cervical pain" impairment. (*See* Tr. 18–19.)

Defendant argues, citing *Bledsoe v. Barnhart*, 165 F. App'x 408, 2006 WL 229795 at *3 (6th Cir. Jan. 31, 2006), that it was sufficient that the ALJ "went into extensive detail in discussing the medical evidence concerning Plaintiff's cervical spine condition, imaging results, and treatment history . . . and the ALJ was under no heightened articulation requirement at Step Three." (Def.'s Mot. at 11–12.) In *Bledsoe*, the court noted that the ALJ had "described evidence pertaining to all impairments, both severe and non-severe, for five pages earlier in his opinion and made factual findings," and therefore found it sufficient that the ALJ merely "stated that he considered the combination of all impairments even though he did not spell out every fact a second time under the step three analysis." *Bledsoe*, 165 F. App'x at 410. Here, the ALJ's conclusion at step three was reached before any summary or analysis of the evidence. (*See* Tr. 18.) Moreover, the ALJ conducted a step-by-step analysis of the mental impairment listings that was in sharp contrast to the absence of any discussion of the physical impairment listings. *See Reynolds*, 424 F. App'x at 415 (comparing the ALJ's "thorough analysis" of the listing for affective disorders to the lack of analysis of the claimant's physical impairments in relation to

9

the listings).

The measure of sufficiency at step three is whether the ALJ's reasoning is sufficiently explained for this Court to review it. In *Reynolds*, the Sixth Circuit held that "the ALJ needed to actually evaluate the evidence, compare it to Section 1.00 of the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that the ALJ's decision at Step Three was supported by substantial evidence." *Id.* at 416. The ALJ's total silence regarding the evidence of Rivard's physical impairments at step three does not meet this standard.

An ALJ's failure to articulate a step three finding, however, may not be cause for remand if it is harmless. *See id.* at 416 ("correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence Reynolds put forth could meet this listing."). Where "concrete factual and medical evidence" is "apparent in the record" such that a court can discern how the ALJ "would have" reasoned, the outcome should be affirmed. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 656–57 (6th Cir. 2009); *see also M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 860 (E.D. Mich. 2012) (discussing case law). But in performing this analysis, the Court must exercise caution. The Court may not find the ALJ's procedural error harmless merely because substantial evidence exists in the record that could uphold the ALJ's decision. *See M.G.*, 861 F. Supp. 2d at 860. In *Rabbers v. Commissioner of Social Security*, the Sixth Circuit warned that it may be difficult or impossible to determine whether an error is harmless when the record contains "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the claimant that the ALJ simply failed to acknowledge or

consider." 582 F.3d at 657–68. The Court cannot speculate as to how the ALJ might have weighed such evidence. *See M.G.*, 861 F. Supp. 2d at 860–61. Accordingly, the Court looks to determine whether the uncontradicted, unambiguous factual and medical evidence in the record clearly establishes that Rivard does not meet or medically equal Listing 1.04.

Immediately, the Court is presented with a problem: there is no medical expert opinion in the record on whether Rivard's physical impairments (alone or combined with her mental impairments) medically equal a listed impairment. Social Security Ruling ("SSR") 96-6p requires that the "judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the administrative law judge or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."[1] SSR 96-6p, 1996 WL 374180 at *3 (1996); *see also* 20 C.F.R. § 416.926(c) ("We also consider the opinion given by one or more medical or psychological consultants designated by the Commissioner."); *Retka v. Comm'r of Soc. Sec.*, 70 F.3d 1272 (6th Cir. 1995) ("Generally, the opinion of a medical expert is required before a determination of medical equivalence is made."); *Barnett v. Barnhart*, 381 F.3d 664, 667, 670 (7th Cir. 2004) ("Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue."); *Fowler v. Comm'r of Soc. Sec.*, No. 12-12637, 2013 WL 5372883, at *4 (E.D. Mich. Sep. 25, 2013) (remanding because there was no expert medical opinion on the issue of equivalence, collecting cases); *Manson v. Comm'r of Soc. Sec.*, No. 12-11473, 2013 WL 3456960, at *11 (E.D. Mich. July 9, 2013) (remanding for an expert opinion at step three).

---

1 Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Heckler v. Edwards*, 465 US 870, 873 n.3 (1984).

A "Disability Determination and Transmittal" form signed by a medical or psychological consultant, a "Psychiatric Review Technique" form, or "various other documents on which medical and psychological consultants may record their findings," can fulfill this requirement to "ensure that this opinion has been obtained at the first two levels of administrative review." *See* SSR 96-6p, 1996 WL 374180, at *3. Here, the Disability Determination and Transmittal form refers to the Mental Residual Functional Capacity form completed by Sheila C. Williams-White, Ph.D., for the "Physician or Medical Specialist Signature." (Tr. 75.) Dr. Williams-White's specialty was psychology. (*See* Tr. 299; Program Operations Manual System § DI 26510.090(D), *available at* http://policy.ssa.gov/poms.nsf/lnx/0426510090 (last updated Aug. 29, 2012).) The Mental RFC form she completed expressly addressed only a listing for mental impairments: Listing 12.04 for affective disorders. (Tr. 376.)

Dr. Williams-White's opinion cannot support a conclusion that Rivard's physical impairments were not equivalent to Listing 1.04. *See Buxton v. Halter*, 246 F.3d 762, 775 (6th Cir. 2001) (finding that a psychologist was not qualified to diagnose a claimant's underlying physical conditions); *cf. Byerley v. Colvin*, No. 12-CV-91, 2013 WL 2145596, at *11 (N.D. Ind. May 14, 2013) ("Because the psychologist who prepared the form did not consider physical impairments, it cannot be relied on as expert opinion that Plaintiff's combination of physical and mental impairments do not equal a Listing."); *Watson v. Massanari*, No. 00-3621, 2001 WL 1160036, at *14 (E.D. Pa. Sept. 6, 2001) (remanding "so that the ALJ can enlist the services of a medical expert capable of making an equivalency finding as to Plaintiff's impairments *in combination*," where the expert opinions on equivalence in the record expressly addressed only

the claimant's physical impairments).

The Court's review of the records, from the limited standpoint of a layperson, suggests that it may be unlikely that Rivard can meet or medically equal Listing 1.04. But there appears to be conflicting evidence in the record that the ALJ did not resolve. For example, Rivard's pain specialist, Dr. William H. Kole, who treated Rivard on a monthly basis from at least January 2008 through September 2010, repeatedly noted in his physical examination findings that Rivard had limited range of motion of the spine and neck. (*See, e.g.*, Tr. 316, 674, 807.) But Rivard's surgeon, Dr. Bradley D. Ahlgren, repeatedly found "[f]ull, painless range of motion" of the neck and spine. (*See, e.g.*, Tr. 537.) ALJ Sleater did not address this apparent conflict. (*See* Tr. 20–21.)

In fact, ALJ Sleater did not discuss any of the many records from Dr. Kole. (*See id.*) As Plaintiff notes (Pl.'s Mot. at 15), the opinion of a treating physician is the subject of a special rule: such an opinion must be given controlling weight if it is well-supported and not inconsistent with the record, and even if it is not given controlling weight, it is subject to a rebuttable presumption of deference. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013); *Rogers*, 486 F.3d at 242; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Defendant argues that the ALJ's failure to discuss Dr. Kole's opinions is not error because he "stated no specific limitations, and his opinion that Plaintiff was totally and permanently disabled was owed no special weight, as it related to an issue reserved to the Commissioner." (Def.'s Mot. at 15.) This cannot excuse the ALJ's total failure to even mention

13

the voluminous records from a doctor who examined Rivard every month for more than two years, and made numerous statements about Rivard's symptoms, diagnosis, and prognosis. *See Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 569 (6th Cir. 2009) (holding that for the treating source rule to apply, there must be a "genuine assertion by the treating physician of an opinion involving the claimant's 'symptoms, diagnosis, and prognosis'").

Moreover, an ALJ must always provide enough explanation for a reviewing court to understand how he or she reached the disability determination. *See Stacey v. Comm'r of Soc. Sec.*, 451 F. App'x 517, 518 (6th Cir. 2011) (reversing where the ALJ failed to discuss his reasons for rejecting an examining doctor's opinion in favor of a non-examining doctor's opinion on a key issue); *Beck v. Comm'r of Soc. Sec.*, No. 12-CV-11067, 2012 WL 7827842 (E.D. Mich. Dec. 26, 2012) (recommending remand where the ALJ did not adequately explain how he accounted for an examining physician's opinion), *report and recommendation adopted*, 2013 WL 1317013 (E.D. Mich. Mar. 29, 2013); *see also Lowery v. Comm'r of Soc. Sec.*, 55 F. App'x 333, 339 (6th Cir. 2003) ("Moreover, an 'ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning.'") (quoting *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).

Rivard also argues that the ALJ erred in assessing her credibility. (Pl.'s Mot. at 14–15.) In evaluating Rivard's credibility, the ALJ reasoned that "[t]here is no objective medical evidence in the record to support" Rivard's allegations regarding arm and hand numbness. (Tr. 21.) But Dr. Kole's examination findings repeatedly note that Rivard was experiencing

numbness in her neck, arms, and hands. (*See, e.g.*, Tr. 294, 315, 496, 729.) The ALJ's findings on Rivard's credibility may change after the records from Dr. Kole are evaluated on remand.

## V. CONCLUSION AND RECOMMENDATION

For the reasons set forth above, this Court finds that the ALJ erred by failing to articulate a step three finding, failing to obtain a medical expert opinion on medical equivalence, and failing to address the opinions of a treating physician. The Court therefore RECOMMENDS that Plaintiff's Motion for Summary Judgment (Dkt. 9) be GRANTED IN PART, that Defendant's Motion for Summary Judgment (Dkt. 10) be DENIED, and that, pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner of Social Security be REMANDED for a proper evaluation of the record.

## VI. FILING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier*, 454 F.3d at 596–97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be

served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Date:   December 17, 2013                                s/Laurie J. Michelson
                                                         Laurie J. Michelson
                                                         United States Magistrate Judge

**PROOF OF SERVICE**

The undersigned certifies that the foregoing document was served upon the parties and/or counsel of record via the Court's ECF System and/or U. S. Mail on December 17, 2013.

                           s/Jane Johnson
                           Case Manager to
                           Magistrate Judge Laurie Michelson

16